IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **HECTOR ZABALA-DE JESUS**, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>**SANOFI AVENTIS PUERTO RICO, INC.**, *et al.*,<br><br>    Defendants. | Civil No. 15-1803 (BJM) |

**OPINION AND ORDER**

   Hector Zabala-de Jesus ("Zabala"), Dolly Ann Rivera-Roman ("Rivera"), and their conjugal partnership brought this action against Sanofi Aventis Puerto Rico, Inc. and Sanofi US Services, Inc. (collectively, "Sanofi") under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Puerto Rico Law 100 ("Law 100"), P.R. Laws Ann. tit. 29, § 146, and Article 1802 of the Puerto Rico Civil Code ("Article 1802"), P.R. Laws Ann. tit. 31, § 5141. Docket No. 10 ("Am. Compl."). Contending that Zabala signed a release waving each of the three causes of action alleged in the amended complaint, Sanofi moved for judgment on the pleadings, Docket Nos. 21, 28, and Zabala opposed. Docket Nos. 25, 30. The case is before me on consent of the parties. Docket Nos. 14, 15.

   For the reasons that follow, judgment on the pleadings is **GRANTED IN PART**.

**APPLICABLE STANDARD**

   Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The pleadings generally include the complaint and the answer, unless the court orders a reply to the answer. *See* Fed. R. Civ. P. 7(a). The standard under Rule 12(c) "is analogous to that of a motion to dismiss" under Rule 12(b)(6). *Viera-Marcano v. Ramirez-Sanchez*, 224 F. Supp. 2d 397, 399–400 (D.P.R. 2002); *see also Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54–55 (1st Cir. 2006) ("the two motions are

ordinarily accorded much the same treatment," except for the "modest difference" that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole."). To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández v. Fortuño-Burse*t, 640 F.3d 1, 12 (1st Cir. 2011). The plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary" for the action. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Taken together, the facts pleaded, and all reasonable inferences that may be drawn therefrom, must "state a plausible, not a merely conceivable, case for relief." *Ocasio-Hernández*, 640 F.3d at 12.

A release "is an affirmative defense." *Ruiz-Sanchez v. Goodyear Tire & Rubber Co.*, 717 F.3d 249, 252 (1st Cir. 2013) (citing Fed. R. Civ. P. 8(c)(1)). "Dismissal 'on the basis of an affirmative defense requires that (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude.'" *Ruiz-Sanchez*, 717 F.3d at 252 (quoting *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006) (internal quotation marks omitted)). Allowable sources of information include "documents the authenticity of which are not disputed by the parties,'" "documents central to plaintiffs' claim," and "documents sufficiently referred to in the complaint." *See Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009). Zabala executed a Separation and General Release Agreement (the "Release"), Docket No. 21-1, and it is uncontested that this document may be considered at this stage. *See Rivera*, 575 F.3d at 15.

## BACKGROUND[1]

Zabala is 56 years old and began working for Sanofi as a product manager in 1997. Am. Compl. ¶¶ 3, 6. He was subsequently promoted to the marketing manager position in

---

[1] This account is based upon the factual allegations in the amended complaint, and not the many "legal conclusions couched as fact" included therein. *See Ocasio-Hernández*, 640 F.3d at 12.

2000, to the senior marketing manager position in 2003, and to a specialized senior marketing manager position in 2013. *Id.* ¶ 7. On January 8, 2014, Sanofi informed Zabala that his employment would end on February 7, 2014, due to a reduction in force, a reason Zabala alleges was a pretext for age-based discrimination. *Id.* ¶¶ 9–16, 20. At the time of his termination, Zabala was earning an annual compensation of approximately $170,000, including a gross salary of $108,900, an annual bonus of approximately $25,000, a company car (an expense worth approximately $18,000), and other benefits, like medical and pension plans, valued at approximately $19,000. *Id.* ¶ 17.

      Sanofi offered Zabala a severance payment equivalent to approximately 74 weeks of his regular base salary (an amount totaling around $171,569), approximately one year of medical and dental benefits, and "outplacement services" so long as he agreed to execute the Release. *Id.* ¶¶ 18, 19, 21; Release ¶ 1. Sanofi emphasized that Zabala would not be entitled to receive this "separation package" unless he executed the Release, and Zabala was not allowed to negotiate the terms of the agreement. *Id.* ¶¶ 21, 23. Zabala executed the Release, but alleges that he did so because he was under "economic pressure."[2] *Id.* ¶ 26. According to Zabala, he was under "economic pressure" that amounted to "duress" because he "was the sole provider of his household," his wife (Rivera) was suffering from a medical condition requiring costly medication, he was "at risk" of losing "his house," he would need to purchase a vehicle, and he would need to pay for his 18-year-old son's private education. *Id.* ¶ 26. Zabala has been unable to find "equivalent employment in status and pay." *Id.* ¶ 27. Zabala and Rivera commenced this action in June 2015, asserting claims arising under the ADEA, Law 100, and Article 1802. Docket No. 1.

---

[2] It is uncontested that Zabala was ultimately provided with, and executed, the Release. However, the date when Sanofi provided the Release to Zabala is unclear from the allegations in the amended complaint, and the Release's signature page is blank. In this vein, an attachment to the Release states that Zabala acknowledged receipt of the Release on February 18, 2014. Docket No. 21-1 at 10. On the other hand, Sanofi's portion of the initial scheduling memorandum states that Sanofi provided the Release to Zabala on February 7, 2014. Docket No. 19 at 35. And Sanofi adds that on January 9, 2014—before Zabala's termination—"the Company . . . provided [Zabala] with a sample of the Release for his evaluation and consideration." Docket No. 19 at 35 n.4.

# DISCUSSION

Sanofi contends that the Release complies with the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), that the Release waives the ADEA, Law 100, and Article 1802 claims, and that the allegations relating to Zabala's "economic pressure"—even if assumed true—are insufficient to void the valid Release. Docket Nos. 21, 28. Zabala responds that the Release invalidly waives his three claims because it violates the OWBPA and Puerto Rico Law 80 ("Law 80"), P.R. Laws Ann. tit. 29, § 185a *et seq.*, and because it was executed under "economic duress." Docket Nos. 25, 30.

## I.      Release of ADEA Claims

At the outset, Sanofi contends that a release waiving ADEA claims is valid so long as it complies with the OWBPA, and that the "totality of the circumstances" surrounding the execution of the release are immaterial. Docket No. 28 at 5. "For an employee's waiver of ADEA rights to be enforceable, it must be 'knowing and voluntary.'" *Am. Airlines, Inc. v. Cardoza-Rodriguez*, 133 F.3d 111, 117 (1st Cir. 1998). "Added as a collection of discrete amendments to the" ADEA, the OWBPA "imposes, in relevant part, mandatory requirements for waivers of ADEA rights and claims . . . to ensure that 'older workers are not coerced or manipulated into waiving their rights to seek legal relief under the ADEA.'" *Syverson v. Int'l Bus. Machs. Corp.*, 472 F.3d 1072, 1075–76 (9th Cir. 2007) (internal citations omitted) (quoting S. Rep. No. 101–263, at 5 (1990), as reprinted in 1990 U.S.C.C.A.N. 1509, 1510); *see also Currier v. United Techs. Corp.*, 393 F.3d 246, 251 n.4 (1st Cir. 2004) ("The OWBPA was enacted in 1990 to protect older workers who are terminated as part of a group, providing them access to information that might assist them in legal challenges to their layoffs").

The "OWBPA 'is clear: An employee 'may not waive' any *ADEA claim*' unless the requirements of § 626(f) are satisfied." *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 13 (1st Cir. 1999) (quoting *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426–27 (1998) (emphasis added)); *see also Stonkus v. City of Brockton Sch.*

*Dep't*, 322 F.3d 97, 102–03 (1st Cir. 2003) (OWBPA's statutory requirements did not apply to release of state-law claim that did not itself require compliance with "the pertinent elements of" § 626(f)). For the release of an ADEA claim to be valid, the OWBPA mandates compliance with *each* of the following "minimum" requirements:

> (1) The release must be written in a manner calculated to be understood by the employee signing the release, or the average individual eligible to participate;
>
> (2) the release must specifically refer to claims arising under the ADEA;
>
> (3) the release must not purport to encompass claims that may arise after the date of signing;
>
> (4) the employer must provide consideration for the ADEA claim above and beyond that to which the employee would otherwise already be entitled;
>
> (5) the employee must be advised in writing to consult with an attorney prior to executing the agreement;
>
> (6) the employee must be given at least 45 days to consider signing if the incentive is offered to a group;
>
> (7) the release must allow the employee to rescind the agreement up to 7 days after signing; and
>
> (8) if the release is offered in connection with an exit incentive or group termination program, the employer must provide information relating to the job titles and ages of those eligible for the program, and the corresponding information relating to employees in the same job titles who were not eligible for the program.

*Cardoza-Rodriguez*, 133 F.3d at 117 (emphasis removed) (citing 29 U.S.C. § 626(f)(1)(A)-(H)). But these "statutory factors are not exclusive and other circumstances, outside the express statutory requirements, may impact whether a waiver" of an ADEA claim is valid. *See, e.g.*, *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1228 (10th Cir. 1999).

Accordingly, "nonstatutory circumstances, such as fraud, duress, or coercion in connection with the execution of the waiver, may render an ADEA waiver not 'knowing and voluntary.'" *Griffin v. Kraft Gen. Foods, Inc.*, 62 F.3d 368, 373–74 (11th Cir. 1995);

*see also Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 295 n.8 (3d Cir. 2003) ("totality of circumstances" may be considered in addition to the OWBPA's statutory requirements); *Melanson v. Browning-Ferris Indus., Inc.*, 281 F.3d 272, 274 & 274 n.2 (1st Cir. 2002) ("a release of . . . federal statutorily-created rights, must be knowing and voluntary, as evidenced by the totality of the circumstances," and, moreover, "an employee may not waive a claim pursuant to the [ADEA] if the release does not *also* satisfy the stringent demands set forth by Congress in the" OWBPA) (emphasis added); *Bennett*, 189 F.3d at 1228 ("non-statutory circumstances such as fraud, duress, or mutual mistake may render an ADEA waiver not 'knowing and voluntary'").

In this case, Sanofi contends that it has met its burden of showing that the Release complied with each of the OWBPA's statutory requirements. *See Cardoza-Rodriguez*, 133 F.3d at 117 ("The OWBPA . . . explicitly places the burden on the party asserting the validity of a waiver to demonstrate that the waiver was 'knowing and voluntary'") (citing 29 U.S.C. § 626(f)(3)). Sanofi first argues—without opposition from Zabala—that the Release was written "in a manner calculated to be understood by" Zabala, particularly since he was a specialized senior marketing manager who "was responsible for," among other things, "providing strategic planning" to "a high-growth organization." *See* Am. Compl. ¶ 7; 29 U.S.C. § 626(f)(1)(A). Because there is no contention that the Release was written in overly technical language or cumbersome legalese, or that Zabala lacked the sophistication to understand the terms of the Release, the OWBPA's first statutory requirement is satisfied. *See id.* There is also no dispute that Paragraph 3 of the Release "specifically" refers to claims arising under the ADEA. *See id.* § 626(f)(1)(B); Release ¶ 3.

Sanofi next suggests that the Release "does not release claims arising out of occurrences that post-date its execution." Docket No. 21 at 7 (citing Release ¶ 3); *see* 29 U.S.C. § 626(f)(1)(C). The OWBPA specifically mandates "that a waiver may not be considered knowing and voluntary unless at a minimum . . . the individual does not waive rights or claims that may arise after the date the waiver is executed." 29 U.S.C. § 626

(f)(1)(C). The First Circuit has read this statutory requirement to mean that "the release must not purport to encompass claims that may arise after the date of signing." *Cardoza-Rodriguez*, 133 F.3d at 117 (citing 29 U.S.C. § 626(f)(1)(A)–(H)). Contrary to the mandates of the OWBPA, Paragraph 2 of the Release purports to do just that. Release ¶ 2.

Paragraph 2 expressly states that Zabala agreed to "forever release the Company and its parent companies . . . of any and all claims, suits, obligations, losses, causes of actions . . . that you may presently have, known or unknown, alleged or not alleged, related to, or that *may arise* in connection with your employment with the Company and/or its termination, or any event occurred [sic] up to and including the date of signature [sic] of this Agreement *and/or the date of termination*." Release ¶ 2 (emphases added). Contrary to Sanofi's suggestion, the Release is too broad and violates the OWBPA because it is not limited to claims arising before "the date of signing." *See Cardoza-Rodriguez*, 133 F.3d at 117. Indeed, the Release's capacious language included in Paragraph 2 forecloses an employee from bringing an ADEA claim arising after the date of signing the release but before his or her termination. *See id.* This contractual language thus violates the OWBPA's command that a release must not purport to encompass claims "that may arise after the date the waiver is executed." 29 U.S.C. § 626(f)(1)(C).

To prevail, Sanofi "needed to demonstrate that" the Release "complied with each of the section 626(f) requirements." *See Cardoza-Rodriguez*, 133 F.3d at 117. In *Cardoza-Rodriguez*, the First Circuit reversed the district court and ruled "as a matter of law" that a release failed to comply with the OWBPA's requirements where the employee was not advised to consult with an attorney prior to signing the release, as required by § 626 (f)(1)(E). *See Cardoza-Rodriguez*, 133 F.3d at 117. The *Cardoza-Rodriguez* court reasoned that given "the burden [the] OWBPA places on employers to demonstrate their agreements contain the required information," the employer's failure to do so under the circumstances of that case precluded enforcement of the release. *See Cardoza-Rodriguez*, 133 F.3d at118.

As in *Cardoza-Rodriguez*, the Release in this case fails to comply with one of the minimum requirements of the OWBPA, namely, § 626(f)(1)(C). And because Sanofi has not come forward with any argument as to why the Release is enforceable despite its facial noncompliance with § 626(f)(1)(C), Sanofi has failed to carry its burden of establishing "the affirmative defense with certitude."[3] *See Ruiz-Sanchez*, 717 F.3d at 252; *Nisselson*, 469 F.3d at 150. And Sanofi further failed to do so because the Release Sanofi provided to the court contains a blank signature page—leaving unclear the precise date when Zabala signed the Release. Judgment on the pleadings is thus denied as to Zabala's ADEA claim.

## II.     Release of State-Law Claims

A finding that a release is invalid to waive an ADEA claim does not necessarily carry over to non-ADEA claims arising under state law. *See Cardoza-Rodriguez*, 133 F.3d at 121 (district court reversed where it found that ADEA claim was validly released and that Law 100 claim was similarly waived because "the result is the same under Puerto Rico law"). This is particularly so because some state-law claims do not call for compliance with the OWBPA's stringent requirements for the release of ADEA claims. *See Stonkus*, 322 F.3d at 103 (OWBPA's requirements did not apply to release of the state-law claim at issue).

Sanofi contends that the Release in this case validly waived the Law 100 and Article 1802 claims—the only state-law claims raised in the amended complaint. "As a general rule, '[r]ights granted by the laws [of Puerto Rico] may be renounced, provided such renunciation be not contrary to law, to public interest or public order, or prejudicial to the interest of a third person.'" *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 11 (1st Cir. 2007) (citing P.R. Laws Ann. tit. 31, § 4). A Law 100 claim may be waived in a release, and so may a claim arising under Article 1802. *See Caban Hernandez*, 486 F.3d at 12 (Law 100 claim validly waived in a release); *Rivera-Olmo v. State Ins. Fund Corp.*

---

[3] Notably, Paragraph 3 of the Release contains distinct language that is arguably more favorable to Sanofi's position. Release ¶ 3. But Sanofi has not explained how the language in Paragraph 3 would, if at all, serve to cure the issues engendered by the broad language in Paragraph 2. This deficiency is further reason for finding that Sanofi has not carried its burden at this juncture.

*(SIFC)*, 250 F. App'x 365, 367 (1st Cir. 2007) ("Any of Rivera-Olmo's claims alleging new violations of . . . Article 1802 are . . . barred by the general release").

The release of a claim is referred to as a "compromise" under Puerto Rico law. *Ruiz-Sanchez*, 717 F.3d at 252. "The type of compromise at issue here is an 'extrajudicial compromise'—a compromise entered either 'before the commencement of an action' or 'without the court's intervention.'" *Id.* (quoting *Neca Mortg. Corp. v. A & W Developers S.E.*, 1995 P.R.-Eng. 905,586, 137 D.P.R. 860 (1995)). "The Supreme Court of Puerto Rico has enumerated three prerequisites for the release or settlement of a claim: (i) 'an uncertain legal relationship,' (ii) 'an intent to eliminate [the] uncertainty,' and (iii) 'reciprocal concessions.'" *Ruiz-Sanchez*, 717 F.3d at 253 (quoting *Citibank v. Dependable Ins. Co.*, 21 P.R. Offic. Trans. 496, 505–06, 121 D.P.R. 503 (1988)). Neither party claims that either Law 100 or Article 1802 claims must comply with state-law requirements analogous to the OWBPA's. *See Caban Hernandez*, 486 F.3d at 11 (release of state-law claims upheld where employees did not identify "any provision of Puerto Rico's Civil Code, or any specific tenet of Puerto Rico's case law, that invalidates the releases or undercuts their efficacy").

The Release in this case meets each of the Puerto Rico Supreme Court's three requirements for a valid extrajudicial compromise. First, the termination of Zabala's employment "necessarily created an uncertain legal relationship." *See Ruiz-Sanchez*, 717 F.3d at 253. The second requirement is also met because "the language of the [R]elease manifests an obvious intent to eliminate those uncertainties." *See id.* In the Release, Zabala agreed to release his Article 1802 and Law 100 claims, among others, and he also acknowledged that "the separation payments" he would receive "exceed[ed] any amounts to which [he] would otherwise be entitled." Release ¶¶ 3, 5. Third, the parties made reciprocal concessions because Zabala agreed not to pursue the Article 1802 and Law 100 claims, and Sanofi agreed to provide Zabala a severance payment, one year of medical and dental benefits, and "outplacement services." Release ¶¶ 1, 3.

Zabala-de Jesus, *et al*. v. Sanofi Aventis Puerto Rico, Inc., *et al*., Civil No. 15-1803 (BJM)   10

Notwithstanding the above, Zabala contends the entire Release is unenforceable, arguing that parts of this agreement violate Law 80. Zabala's argument lacks merit for at least three reasons. First, and most importantly, Zabala has not brought a Law 80 claim against Sanofi. *See* Docket No. 10. For this reason, the court need not—and does not—address the "difficult" interpretive question of whether an employee may waive a Law 80 claim in an extrajudicial compromise. *See Ruiz-Sanchez*, 717 F.3d at 253. Second, because Zabala has not brought a Law 80 claim, his reference to Law 80's anti-waiver provision, P.R. Laws Ann. tit. 29, § 185i, "is a red herring" when determining whether he validly released the Law 100 and Article 1802 claims. *See Caban Hernandez*, 486 F.3d at 11 n.6 (employees validly released Law 100 claims, and because no Law 80 claims were brought, "casual reference to the prohibition on waiver in Law 80" was "a red herring").

Third, even assuming *arguendo* that Zabala is correct in contending that parts of the Release violate Law 80, this would not lead to the invalidation of the entire Release. As an initial matter, the Release has a severability clause that permits "the rest of th[e] document" to "continue in full force and effect" if a part thereof is declared unenforceable. *See* Release ¶ 14. And Law 80 specifically states, "Any contract *or part thereof* in which the employee waives the compensation to which he is entitled to, pursuant to §§ 185a 185m of this title, shall be null and void." P.R. Laws Ann. tit. 29, § 185i (emphasis added). Construing Law 80 as Zabala urges would effectively and impermissibly read the "or part thereof" language out of the statute. *See id.*; *see also Ortiz v. Am. Airlines, Inc.*, 94 F. Supp. 3d 126, 131 (D.P.R. 2015) ("any *clause* in which an employee waives his or her rights to receive the statutory severance [under Law 80] is null and void") (emphasis added).

Zabala further contends that the Release is invalid because he was under "economic pressure" when he executed the agreement. In this regard, Zabala underscores that he "was the sole provider of his household," his wife (Rivera) was suffering from a medical condition requiring costly medication, he was "at risk" of losing "his house," he would need to purchase a vehicle, and he would need to pay for his 18-year-old son's private

education. This "economic pressure," Zabala argues, amounted to "economic duress." But even assuming that the allegations relating to the "economic pressures" are true, these circumstances are inadequate to invalidate the Release's waiver of the Law 100 and Article 1802 claims.

*Ruiz-Sanchez* aptly illustrates part of the reasons why Zabala's duress argument is misplaced. 717 F.3d at 253–54. In that case, the employee signed a release that waived his Law 80 claim. *Id.* Though the First Circuit ultimately ruled that it was unclear whether Puerto Rico law allowed such a claim to be released in an extrajudicial compromise, the court first resolved the employee's argument "that his execution of the release and his acceptance of the severance payment should not matter because those acts occurred under duress." *Id.* Because the employee had an adequate amount of time to consider the agreement and to rescind it after its execution, and because the complaint failed to allege facts other than the pressure arising from the imminence of the employee's termination, the First Circuit rejected the employee's duress argument. *Id.* That reasoning is apposite here, for it is uncontested that Zabala had ample time to consider the Release and to rescind it.

Moreover, the First Circuit and others have rejected variants of the "economic duress" argument Zabala presses here. *See Melanson*, 281 F.3d at 277 (First Circuit held that "duress" may not "be inferred from merely the emotional and financial stress associated with loss of a job. To hold otherwise would be to make it virtually impossible for employers and employees to enter into binding settlements of employment disputes occasioned by job losses, lay-offs and the like."); *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995) (though employee "certainly felt some economic pressure to accept the attractive severance package and settle any potential claims he might have against [the employer], this pressure does not rise to the level of economic duress"); *O'Hare v. Glob. Nat. Res., Inc.*, 898 F.2d 1015, 1018 (5th Cir. 1990) (allegations of "duress" lacked merit where employee merely claimed that "stress and anxiety . . . led him to sign the release"); *Anselmo v. Mfrs. Life Ins. Co.*, 771 F.2d 417, 420 (8th Cir. 1985) (though

employee "surely confronted a difficult dilemma-accepting the termination perks or pursuing his legal rights under the employment agreement-the fact that the choice was difficult does not mean that he lacked the requisite free will to make the decision"); *see also Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F. Supp. 2d 488, 492 (D. Md. 2002) ("both law and policy suggest that one's personal economic burdens resulting from the loss of a job . . . should not constitute 'duress' for the purpose of invalidating a termination release"), *aff'd*, 63 F. App'x 169 (4th Cir. 2003).

Puerto Rico law does not point to a contrary result. "The Spanish term for duress is 'intimidación,' which is one of the four 'vices of consent.'" *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.*, 954 F. Supp. 438, 450 (D.P.R. 1996), *aff'd sub nom. Garita Hotel Ltd. P'ship v. Ponce Fed. Bank*, 122 F.3d 88 (1st Cir. 1997). Intimidación, which also translates to "intimidation," "exists when one of the contracting parties is inspired with a reasonable and well-grounded fear of suffering an imminent and serious injury to his person or property, or to the person or property of the spouse, descendants, or ascendants." P.R. Laws Ann. tit. 31, § 3406 ("age, sex, and status" must be considered). The burden of showing intimidation is on the party seeking to avoid the contract for being obtained without valid consent. *See Garita Hotel Ltd. P'ship*, 954 F. Supp. at 450.

In this case, Zabala does not point to any Puerto Rico statute or case law holding that the allegations in the amended complaint anent the "economic pressures" he faced constitute "intimidation" under Puerto Rico law. Nor does he suggest that his sex, age, or status affected his ability to consent, or that he was "inspired with a reasonable and well-grounded fear of suffering an imminent and serious injury to his person or property." *See* P.R. Laws Ann. tit. 31, § 3406. Accordingly, Zabala's allegations—even if taken as true—are inadequate to constitute "intimidation" under Puerto Rico law. *See Soto v. State Indus. Prod., Inc.*, 642 F.3d 67, 77 (1st Cir. 2011) (because employee did "not claim that State Chemical," her employer, "made any threat of injury to her person, and she has made no showing that she had a property interest in her at-will employment, she can make no viable

claim that she was intimidated under the meaning of Puerto Rico law"). Having found no merit to Zabala's allegations of duress, Zabala's Law 100 and Article 1802[4] claims must be dismissed, in accordance with terms of the Release he executed.

Rivera's derivative Article 1802 claim must also fail. "Under Puerto Rico law, close relatives of one who has suffered the slings and arrows of employment discrimination may invoke Article 1802 as a vehicle for prosecuting a cause of action." *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 12 (1st Cir. 2007) (citing *Santini Rivera v. Serv. Air, Inc.*, 137 D.P.R. 1 (1994)). "But such a cause of action is wholly derivative and, thus, its . . . viability is contingent upon the viability of the underlying employment discrimination claim." *Caban Hernandez*, 486 F.3d at 12–13; *see also Mendez-Matos v. Municipality of Guaynabo*, 557 F.3d 36, 57 (1st Cir. 2009) ("The cause of action is derivative and depends on the viability of the underlying claim of the relative or loved one"). Zabala's Article 1802 and Law 100 claims may not proceed, so Rivera's derivative Article 1802 claim may not go forward to the extent it is based on liability arising under Law 100 and Article 1802. And this is so even though Rivera did not actually sign the Release. *See Caban Hernandez*, 486 F.3d at 12–13 (where employees' claims could not go forward, spouses' derivative Article 1802 claims could not proceed even though they "never signed releases").

---

[4] To the extent Zabala suggests that he may shoehorn the allegations undergirding his ADEA or Law 100 claims into the Article 1802 claim, the suggestion lacks merit because such a claim would not be cognizable under Puerto Rico law. *See Pagan-Renta v. Walgreens of San Patricio, Inc.*, 190 D.P.R. 251 (P.R. 2014) (when construing "a special labor or labor-management law in the context of the remedy sought," the Puerto Rico Supreme Court "has been consistent in construing the statute restrictively" and refusing "to accept the thesis that the lawmaker left the door open to any other relief or cause of action provided by a general statute" like Article 1802); *see also Aguirre v. Mayaguez Resort & Casino, Inc.*, 59 F. Supp. 3d 340, 357 (D.P.R. 2014) ("The tort provision of the Civil Code is supplementary to special legislation, so, to the extent that a special labor law covers the conduct for which a plaintiff seeks damages, she is barred from using that same conduct as the basis for a claim under Article 1802"); *Montoyo Rivera v. Pall Life Scis. Puerto Rico*, LLC, No. CV 16-1199 (BJM), 2017 WL 486932, at *2 (D.P.R. Feb. 6, 2017) ("The weight of authority in this district is consistent with Puerto Rico Supreme Court precedent, holding that an Article 1802 claim cannot be litigated concurrently with a specialized labor law . . . when both claims arise from the same tortious conduct").

Nor may Rivera's Article 1802 claim—which specifically seeks "damages" for "mental anguish and suffering"—proceed as derivative of Zabala's ADEA claim. Am. Compl. ¶¶ 43, 44. It is well-settled that the ADEA "does not allow compensatory damages for pain and suffering," and so Zabala would not be entitled to such damages even if he successfully prosecuted this claim. *See Collazo v. Nicholson*, 535 F.3d 41, 44 (1st Cir. 2008) ("compensatory damages for mental anguish, pain, suffering, humiliation, and loss of enjoyment . . . [are] not available under the" ADEA). Yet, Rivera (Zabala's spouse) seeks to collect via her Article 1802 claim the precise type of damages that Zabala could not receive under the ADEA. The Puerto Rico Supreme Court's decision in *Pagan-Renta* forecloses Rivera's Article 1802 claim. *See Pagan-Renta*, 190 D.P.R. at 253.

In *Pagan-Renta*, an employee, Jose Pagan Colon ("Pagan Colon"), and his wife, Ada Renta Bonilla ("Renta Bonilla"), sued Walgreens of San Patricio, Inc. ("Walgreens"), alleging, among other things, a violation of the Federal Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and Article 1802. *Id.* at 254. Although Pagan Colon could not seek "emotional distress damages" under the FMLA, the plaintiffs specifically "sought damages for Renta Bonilla under" Article 1802. *Pagan-Renta*, 190 D.P.R. at 254, 258; *see also Pagan-Colon v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 16 (1st Cir. 2012) ("a plaintiff may not recover damages for emotional distress under the FMLA"). In light of this circumstance, the precise issue before the Puerto Rico Supreme Court was the following: "When an employee's Article 1802 claim is barred because there is a specific federal statutory employment claim, here the FMLA, does the spouse of the employee nevertheless have a cause of action for emotional distress damages under Article 1802 when such relief is not available to the employee under federal law?" *Pagan-Renta*, 190 D.P.R. at 253.

Puerto Rico's high court answered that question in the "negative," holding that when "a claim made by an employee under Puerto Rico Civil Code sec. 1802 . . . is not actionable because it is barred by a federal statute (specifically the FMLA), neither does the employee's spouse have a cause of action for emotional distress damages under sec.

1802." *Pagan-Renta*, 190 D.PR. at 253, 267. In finding that Renta Bonilla's Article 1802 claim was not cognizable, the *Pagan-Renta* court queried rhetorically, "why should a spouse--or any other relative--be allowed to have a cause of action that the statute under which the damages are claimed, and on which such claim depends, does not make available to the worker who was directly affected." *Id.* at 266. And though the court noted that the "FMLA does not expressly bar a cause of action for emotional distress damages for relatives," the Puerto Rico Supreme Court declined to allow employees' spouses or close ones "to receive more benefits than those awarded to the aggrieved workers." *Id.* at 266.

Here, even if Zabala had not released the Article 1802 claim, his Article 1802 claim for compensatory damages is barred to the extent he is complaining of the same conduct buttressing his ADEA or Law 100 claims. *See supra* Note 4. And though Zabala's ADEA claim remains, the ADEA would not allow him to recover compensatory damages for mental anguish. Because the ADEA forecloses such damages for Zabala, Rivera's Article 1802 claim is not cognizable because she effectively seeks damages that the ADEA "does not make available to the worker who was directly affected." *See Pagan-Renta*, 190 D.P.R. at 266. To hold otherwise, as the Puerto Rico Supreme Court reasoned, would allow Rivera "to receive more benefits than those [that could be] awarded to" Zabala under the ADEA. Thus, judgment on the pleadings is granted as to all Law 100 and Article 1802 claims.

## CONCLUSION

For the foregoing reasons, judgment on the pleadings is **GRANTED IN PART AND DENIED IN PART**. All Law 100 and Article 1802 claims are **DISMISSED**. Zabala's ADEA claim remains.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 13th day of March 2017.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge